## WILLIAM RAUGUTH

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 21, 1900.*

EMBEZZLEMENT—*failure of borrower to return money is not embezzlement.* The failure of a party to properly account for money received from another, who has relied upon the honesty of the former to return the amount with stipulated interest, does not subject him to criminal prosecution for embezzlement.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

OSSIAN CAMERON, J. R. BURRES, and M. L. MCKINLEY, for plaintiff in error.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and BEN. M. SMITH, of counsel,) for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the criminal court of Cook county to reverse a judgment of conviction against plaintiff in error for larceny.   The indictment upon which the trial was had consisted of nine counts, but the substance of the charge is found in the first, which alleges that

William Rauguth and other parties named, on the first day of June, 1896, being agents in the employ of Barbara Hellgoth, embezzled and converted to their own use $600 in money belonging to her, which came to the possession of defendants by virtue of their employment, whereby they "are deemed to have committed the crime of larceny;" and so the jurors say that the said William Rauguth (and other defendants, naming them,) "then and there, in manner and form aforesaid, the said personal goods, funds, money and property of the said Barbara Hellgoth from the said Barbara Hellgoth then and there being found, did then and there feloniously steal, take and carry away."

The evidence introduced upon the trial showed that the defendant, for about three years prior to 1893, was connected with the National Building and Loan Association of Chicago as its secretary, and that Mrs. Hellgoth was a stockholder therein. In April of that year defendant resigned his office as secretary of that association, and, with others, organized the Atlas Building and Loan Association, he becoming the secretary of that company. In 1894 he withdrew from the Atlas and organized a third company, known as the Northwestern Real Estate Loan Company, of which he also became secretary. The evidence tends to show that upon the organization of the second company the defendant induced the prosecuting witness to transfer to the new company her membership, her stock then being worth $300. This transfer was effected by defendant purchasing for Mrs. Hellgoth from the latter company $300 worth of stock, paying in his own money therefor, she afterwards, as she says, surrendering to the new company her pass-book of the National association and receiving a new one of the Atlas. She continued to be a member of the latter company until she had paid in $265 in addition, making in all $565 to her credit in the Atlas. Soon after the organization of the Northwestern the prosecuting witness claims that at the

solicitation of the defendant she transferred her $565 of stock to that company, and that he induced her to put in $35 additional, making a total of $600, for which she then received a certificate, as follows:

"No. 1005.                                Amount $600.00

"NORTHWESTERN REAL ESTATE LOAN CO., &#125;
CHICAGO, ILLINOIS. &#125;

"*Know all men by these presents:* That the Northwestern Real Estate Loan Company of Chicago, in the county of Cook and State of Illinois, for value received, hereby promises to pay to Barbara Hellgoth, or the legal holder thereof, at its office in the city of Chicago, ten years after date, the sum of $600, lawful money of the United States of America, with interest thereon at the rate of six per cent per annum, payable semi-annually, on the first day of January and July in each year, as shown by and upon the surrender of the annexed coupons as they severally become due and payable. The legal holder hereof may withdraw the amount of this certificate at any time after three years by first giving a written notice of sixty days to the company of his or her intention to do so, and shall be entitled to receive the amount of this certificate and the interest agreed thereon up to the date of such notice. The company reserves the right to cancel this certificate at any time after three years, paying to the legal holder hereof the amount of this certificate and the interest agreed thereon. No transfer of this certificate is good unless made on the books of the company.

"In witness whereof, the president and secretary of the said Northwestern Real Estate Loan Company have subscribed their names and have caused the seal of the said company to be affixed at Chicago, Illinois, this first day of May, A. D. 1894.

LEONHARDT SCHAEFER, *President.*
WILLIAM RAUGUTH, *Secretary.*"

Twenty interest coupons, each for $18, were attached to this certificate.

It is claimed by the prosecution that defendant individually got this $600 and fraudulently converted it to his own use, thereby being guilty of embezzlement. The evidence, as it appears from the abstract, wholly fails to show that defendant individually ever had possession of the funds of Mrs. Hellgoth; and while it does appear that the Northwestern company failed and she lost her money,

we are unable to find any evidence even tending to show that this defendant appropriated it to his own use.

It is said the procuring of her to transfer her membership from one of these associations to the other was a scheme on the part of the defendant to obtain her money, but it is not pretended that there is any direct evidence of that fact. This instrument shows upon its face that the transaction on the part of the prosecuting witness was a loan to the company. In her testimony she says:

"When he spoke about making it even money and getting $35 and making up even money, and I would get my interest every six months, I agreed to that. * * * I was to get six per cent for the use of this $600.

Q. "You understood, Mrs. Hellgoth, at the time you got this paper, that you were loaning to this company $600 for three years, didn't you?

A. "Yes, sir. * * *

Q. "You had at this time $565 in there and then you put in $35 more. You were then making a loan of $600?

A. "Yes, sir.

Q. "For how long?

A. "I wanted it for one year, but he said he could not do it,—he would have to make it for three years.

Q. "Then you took it that way, then, for three years?

A. "Yes, sir.

Q. "How much interest?

A. "Six per cent.

Q. "Semi-annually or every six months; is that right?

A. "Yes, sir."

If money is placed in the hands of a person to be loaned for the owner, and the person so entrusted with the money fraudulently converts it to his own use, he will be guilty of embezzlement. "But where one places money in the hands of another relying upon his honesty or responsibility for its return, with the stipulated interest, then a failure of the party to properly account for the money so received will not subject him to a criminal

prosecution for embezzlement." (*Kribs* v. *People*, 82 Ill. 425.) In that case the defendant was convicted of the crime of larceny by embezzlement, and after laying down the foregoing propositions it was said: "While we do not propose to express any opinion upon the evidence, yet from the fact that the defendant guaranteed ten per cent interest from the date the money was received, and the subsequent payment of interest on the money to December 1, 1874, in connection with the agreement to re-pay the $400 on thirty days' notice, may properly raise a well founded doubt in regard to the guilt of the defendant." Here, all the evidence of the transaction shows it to have been one between the prosecuting witness and the association, and that it was a time loan, with a fixed rate of interest, and that she collected several installments of interest according to the terms of the contract. We have been unable to find any sufficient evidence in this record upon which a conviction of larceny by embezzlement can be sustained. In fact, it is not claimed by counsel for the People that any such direct evidence does appear, but the contention seems to be that the evidence shows that defendant imposed upon the ignorance of the prosecuting witness and took an undue advantage of her, and that it is therefore reasonable to conclude that he got her money and fraudulently appropriated it to his own use. It need scarcely be said that a conviction cannot be sustained upon a mere inference of guilt.

There is another insuperable obstacle in the way of sustaining the verdict in this case. The indictment charges that the money embezzled and stolen belonged to Barbara Hellgoth. Her own testimony, without contradiction or explanation, shows that it belonged to herself and her husband, jointly. It is admitted, as a matter of law, that where money or property is alleged in an indictment for larceny to belong to one person and the proof shows it belongs to that person and another jointly, the variance is fatal.

It is insisted here that, notwithstanding the testimony of Mrs. Hellgoth that a part of the money belonged to her husband, inasmuch as she dealt with it it was legally hers, and it must be understood that her husband gave her the money which had belonged to him. We do not agree with that version of the evidence. But aside from this last consideration, we are forced to the conclusion that the evidence wholly fails to prove, or even tends to prove, the commission of the crime charged.

Without reference to the other errors assigned and insisted upon, the judgment of the criminal court must be reversed, and the cause will be remanded to that court with directions to discharge the prisoner.

*Reversed and remanded.*