## The People of the State of Illinois, Defendant in Error, v. James H. Belt, Plaintiff in Error.

Banks and banking, § 64*—*acceptance of deposit when insolvent.* A member of a banking firm who makes false representations as to the bank's financial condition by continuing in business and holding out an invitation to the public to do business with the bank when it is in fact insolvent, to his own personal knowledge, and receives money for deposit through one of his employees, giving a time certificate of deposit, and the money is lost, is guilty of embezzlement under the Criminal Code, Act of 1903 (J. & A. ¶ 3617).

Error to the Circuit Court of Macoupin county; the Hon. Robert B. Shirley, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed April 16, 1915.

John G. Friedmeyer and Peebles & Peebles, for plaintiff in error.

James H. Murphy, for defendant in error; Edward C. Knotts and Rinaker & Rinaker, of counsel.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

Plaintiff in error was convicted of the crime of embezzlement upon an indictment consisting of eight counts returned at the September term, 1913, of the Circuit Court of Macoupin county, and was sentenced to pay a fine of $300 and to imprisonment in the penitentiary for two years. The counts are substantially the same and aver, in substance, that James H. Belt on the thirteenth day of September, 1913, in the county of Macoupin, then and there doing a banking business under the firm name and style of Belt Brothers & Company, corruptly, wilfully, fraudulently and feloniously did then and there receive from Theodore Keuthe as a deposit a certain sum of money, the said deposit being received by the said James H. Belt, doing a banking business as aforesaid, through one Budd, assistant cashier of said Belt doing a banking business

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

as aforesaid, the said Budd being then and there authorized and empowered by said Belt doing said banking business to receive said deposit; that when said deposit was so received said Belt was insolvent and that he knew that he was insolvent and that said money so deposited by Keuthe was then and there lost to said Keuthe.

The indictment is based upon that section of the Criminal Code which as amended in 1903 is as follows (J. & A. ¶ 3617):

"That if any banker or broker, or person or persons, doing a banking business, or any officer of any banking company, or incorporated bank doing business in this State, shall receive from any person or persons, firm, company or corporation, or from any agent thereof, not indebted to said banker, broker, banking company, or incorporated bank, any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery, when at the time of receiving such deposit said banker, broker, banking company or incorporated bank is in his or its knowledge insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer, so receiving such deposit, shall be deemed guilty of embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto, may be imprisoned in the State penitentiary, not less than one nor more than three years."

On the morning of the day named in the indictment, Theodore Keuthe deposited in the bank of plaintiff in error $150 in money and received from the assistant cashier thereof the following certificate of deposit:

"BELT BROTHERS & COMPANY, Bankers.

No. 11491.

BUNKER HILL, ILL., June 13, 1913.

Not sub-ject

Theodore Keuthe has deposited in this bank One Hundred and Fifty-two and twenty-five hundredths Dollars ($152.25),

to  
check.  payable to the order of himself, 'due and payable six months after date' in current funds on the return of this certificate properly endorsed.

WILLIAM N. BUDD,  
Assistant Cashier.''

On June 15, 1913, plaintiff in error delivered the key to his bank to a committee of its depositors, and on June 20, 1913, united with them in asking for the appointment of a receiver by a bill filed in the Circuit Court of Macoupin county. On his voluntary petition in the United States District Court he was adjudged, a bankrupt. There is no contention but that on June 13, 1913, plaintiff in error was hopelessly insolvent and that he knew that he was insolvent at that time. The principal and substantially the only error presented to this court for review is that the court erred in refusing to hold as a matter of law that the transaction with Keuthe was a loan and not a deposit; that as the Supreme Court has considered that time certificates of deposit are in legal effect promissory notes (*Bank of Peru v. Farnsworth,* 18 Ill. 563), the relation of borrower and lender between the plaintiff in error and Keuthe was created, and that under the authority of *Kribs v. People,* 82 Ill. 425, and *Rauguth v. People,* 186 Ill. 93, the failure of plaintiff in error to properly account for the money received from Keuthe, who had relied upon the honesty of the former to return the same with stipulated interest, does not subject him to criminal prosecution for embezzlement. Several instructions based upon this theory were offered by appellant and refused.

There is no analogy between the facts in the *Kribs and Rauguth* cases, *supra,* and those in this case. In neither of the former cases were the defendants bankers doing a banking business, nor were the transactions therein involved connected with such business, and the Act of 1903 above mentioned was not then in existence. It is a matter of common knowledge that the custom

of receiving time deposits is a common practice in the banking business. Such deposits are seldom made with any one but a banker. The fact that plaintiff in error was a banker and doing a banking business unquestionably influenced Keuthe in making the deposit. Plaintiff in error received such deposits on the very ground that he was a banker doing a banking business. The Supreme Court of Wisconsin in the case of *Baker v. State*, 54 Wis. 368, in discussing a somewhat similar statute of that State, said:

"The manifest object of the statute in question was to suppress the business of banking or brokerage by any insolvent person, company or corporation. It therefore inflicts punishment upon persons so engaged, knowing the fact. A banker is one who traffics in money, receives and remits money, negotiates bills of exchange, receives money in trust, to be drawn again, or its equivalent, as the owner has occasion to use it. Banking is the business or employment of the banker, or the business of the bank. * * * The very nature of the business prevents it from being conducted by a person isolated from all communication with others. The business, therefore, not only affects the banker or broker, but every person who deals with him as such. The business is not confined to the property of the banker or broker, but involves all property passing through his hands or entrusted to his keeping. A bank implies capital, and capital invites confidence. A man holding himself out as a banker or broker thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be safely trusted. It requires no argument to show that such assurance is most inviting and influential with the mass of the people, especially with those unacquainted with the history and character of the man. With them the banker or broker is entrusted with money merely because he is a banker or broker, and hence supposed to have surplus capital as a standing guaranty of his agreements and his integrity. For an insolvent banker, company or corporation to continue

the business of banking is to hold out assurances of responsibility and surplus capital where neither exists. To do so knowingly is to secure the confidence, and hence obtain the money, of the ignorant and unwary by an implied deception. It is the old story of securing the victim by a display of false colors. To suppress this mischief, to save the public from being induced to deposit money with such insolvent by the implied assurance of responsibility and wealth essential to the business, when they do not in fact exist, was the evident purpose of the statute. * * * The imprisonment here is not for any debt, much less for a debt arising out of or founded on any contract, but upon a charge of an act made a misdemeanor by the statute, to wit, the receiving of money on deposit as a banker by one knowing himself or such bank to be insolvent.''

The statute of this State does not differentiate or make any distinction between the character of deposits made with the bank, but is most comprehensive in its terms and includes, ''any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery.'' Just as great an injury would be inflicted upon the public by permitting insolvent bankers to receive time deposits as by permitting them to receive deposits of any other character. It is the false representations of the financial responsibility of the banker, and the inducements and invitation held out and extended to the public to make deposits with him by reason thereof, that constitutes the offense.

Twenty-eight instructions were given on behalf of plaintiff in error and there was no other material proposition of law contained in any of the refused instructions which was not covered by those given.

There is some contention that the court made errors in the admission of evidence, but as they have not been pointed out, we have no means of knowing what errors in this record are complained of without searching the record and determining that question for ourselves. This we cannot do, and we have a right to assume that

if they were of a serious character they would have been presented to us in the proper way for our consideration.

The judgment will be affirmed.

*Affirmed.*